Filed 11/22/24  P. v. Mason CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL BARAKA MASON,<br><br>    Defendant and Appellant. | D083500<br><br><br>(Super. Ct. No. SCD214650) |


APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Reversed and remanded with instructions.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Seth M. Friedman, and Andrew Mestman, Deputy Attorneys General for Plaintiff and Respondent.

# I
# INTRODUCTION

Michael Baraka Mason appeals an order summarily denying a petition to vacate his convictions for the first degree murder of Timothy Traaen (count 11) and the attempted murder of N.S. (count 12) under Penal Code section 1172.6.[1] He claims the trial court was required to issue an order to show cause and hold an evidentiary hearing to determine his eligibility for relief because he filed a facially sufficient petition and the record of conviction from his underlying trial does not foreclose relief as a matter of law.

We agree with Mason that he filed a facially sufficient petition and the record of conviction does not conclusively refute the allegations of the petition with regards to the murder conviction. However, the record of conviction precludes relief, as a matter of law, for the attempted murder conviction. Thus, we reverse the summary denial order and remand the matter to the trial court with instructions: (1) to issue a new order summarily denying the petition as to the attempted murder conviction (count 12), and (2) to issue an order to show cause and conduct further proceedings consistent with section 1172.6, subdivision (d), as to the murder conviction (count 11).

# II
# BACKGROUND

A. *Factual Background*

On July 14, 2007, Traaen and N.S. went to a bar to celebrate their anniversary. After they left the bar, they were held at gunpoint in an

---

[1]     Further undesignated statutory references are to the Penal Code.

attempted robbery and shots were fired. Traaen was struck three times and did not survive. N.S. suffered a gunshot wound as well, but survived.[2]

On August 31, 2012, the district attorney filed a third amended information charging Mason with 20 crimes. Relevant here, the information charged him with three first degree murders (§ 187, subd. (a); counts 1, 2, and 11), premeditated attempted murder (§§ 187, subd. (a), 664; count 12), robbery (§ 211; count 13), assault with a firearm (§ 245, subd. (a)(2); count 14), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 15). Counts 11 through 15 arose from the incident involving Traaen and N.S., while the murder charges in counts 1 and 2 arose from an unrelated incident.

The information included multiple-murder special circumstance allegations (§ 190.2, subd. (a)(3)) and robbery-murder special circumstance allegations (*id.*, subd. (a)(17)) for count 11. For counts 11–13, it alleged Mason intentionally and personally discharged a firearm causing great bodily injury or death to a person other than an accomplice (§ 12022.53, subd. (d)). For count 14, it alleged he personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury upon N.S. (§ 12022.7, subd. (a)). Moreover, it alleged he suffered two prior serious felony convictions (§ 667, subd. (a)(1)) and three prior strike convictions (§§ 667, subds. (b)–(i), 1170.12).

After a trial, a jury found Mason guilty of the first degree murder charges (counts 1, 2, and 11), the attempted murder charge (count 12), the lesser included offense of attempted robbery (count 13), the assault with a firearm charge (count 14), and the possession of a firearm charge (count 15),

---

[2]    We draw our brief summary of the offenses from *People v. Mason* (2014) 232 Cal.App.4th 355 (*Mason*), and provide it for background purposes only.

as well as several other unrelated charges. However, it found the attempted murder was not willful, deliberate, and premediated. The jury returned true findings on the multiple-murder and robbery-murder special circumstance allegations, the firearm enhancement and great-bodily-injury allegations described herein, and several other sentencing enhancement allegations attached to other counts. Further, Mason admitted the prior serious felony and prior strike convictions.

On April 4, 2013, the trial court sentenced Mason to nine consecutive terms of life imprisonment without the possibility of parole (LWOP), plus an indeterminate term of 337 years and six months to life, plus a determinate term of 110 years.

On direct appeal, our court reversed certain convictions unrelated to the current proceeding and modified the sentence to impose three LWOP terms, rather than nine. (*Mason, supra*, 232 Cal.App.4th at pp. 367–369.) In all other respects, we affirmed the judgment. (*Id.* at p. 369.)

B. *Senate Bill Nos. 1437 and 775*

In 2018, the Legislature approved Senate Bill No. 1437 (Senate Bill 1437), which went into effect January 1, 2019. The Legislature passed the law to address a perceived "need ... to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b).) In so doing, it recognized, "It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1(d).)

"Senate Bill 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. Under that provision, 'A participant in the perpetration or attempted perpetration of

4

a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. [Citation.] '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). … The accomplice need not actually foresee the nontarget offense.' " (*Curiel, supra*, 15 Cal.5th at p. 449.) Senate Bill 1437 "ended this form of liability for murder." (*Ibid.*)

"Senate Bill 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Subsequently, the Legislature approved Senate Bill No. 775, which " 'extended [retroactive] relief to defendants convicted of

5

*attempted* murder based on the natural and probable consequences doctrine.' " (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1129 (*Morales*).) Later on, "former section 1170.95 was renumbered as section 1172.6 without substantive change. [Citation.] Because these statutory changes do not affect our consideration of the issues raised in this appeal, we refer to the current statute throughout the rest of this opinion." (*Curiel*, at p. 449.)

A petitioner starts the resentencing process by filing a declaration averring that: (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, murder under another theory by which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of murder or attempted murder because of the changes to the murder laws that were implemented by Senate Bill 1437. (§ 1172.6, subds. (a)(1)–(3), (b)(1).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) The prima facie inquiry is a "limited" one. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*) Unless the parties stipulate

6

that the petitioner is entitled to the relief sought, the court must schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)  At the prima facie stage, a "court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972.)  Nor should it " 'reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Id.*, at p. 971.)

" 'However, if the record [of conviction], including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)  In other words, a court should deny a resentencing petition at the prima facie review stage, without issuing an order to show cause, "if the record of conviction conclusively establishes that the petitioner is ineligible for relief as a matter of law." (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.)  "The record of conviction includes, inter alia, jury instructions and verdict forms." (*People v. Morris* (2024) 100 Cal.App.5th 1016, 1023.)  "However, not all documents comprising the record of conviction are sufficient to rebut a petitioner's factual allegations." (*People v. Williams* (2024) 103 Cal.App.5th 375, 386 (*Williams*).)  For example, although an appellate opinion is generally considered part of the record of conviction, section 1172.6 precludes a court from considering any aspect of a prior appellate opinion except the procedural history of the case as recited in the opinion.  (§ 1172.6, subd. (d)(3).)

7

C. *Resentencing Proceedings*

In 2023, Mason filed a petition to have his convictions vacated and to be resentenced under section 1172.6. After receiving the petition, the trial court appointed counsel to represent Mason in the resentencing proceeding.

The district attorney filed a response conceding Mason stated a prima facie case for relief on counts 1 and 2. However, she argued he failed to state a prima facie case for relief on counts 11 and 12. Therefore, she requested that the court deny the petition as to those convictions.

After a prima facie hearing, the trial court issued an order to show cause and scheduled an evidentiary hearing for counts 1 and 2. However, it summarily denied the petition as to counts 11 and 12. With regard to counts 11 and 12, the court stated, "I think there is ample evidence [for] the [c]ourt to find as a matter of law [Mason] is ineligible with respect to those counts because he was the direct perpetrator" and, according to the court, he was "not [prosecuted under] an aiding and abetting or vicarious liability theory."

III

DISCUSSION

A. *The Trial Court Erred by Denying the Petition as to Count 11*

Mason challenges the order summarily denying the petition to vacate his conviction for the murder of Traaen (count 11). He argues the court erred by denying the petition because he stated a prima facie case for relief and the record of conviction does not conclusively negate the allegations of the petition. In particular, he argues the record of conviction leaves open the possibility the jury convicted him under a theory of felony murder that was invalidated by Senate Bill 1437. We agree.

Preliminarily, we observe that the petition alleges: (1) a charging document was filed against Mason permitting the prosecution to proceed

8

under a felony murder theory or a theory of murder under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder under the felony murder rule or the natural and probable consequences doctrine; and (3) he could not presently be convicted of first or second degree murder because of the changes to sections 188 and 189 implemented by Senate Bill 1437. Accepting these allegations as true, as we must, the petition states a prima facie case for relief. (§ 1172.6, subds. (a)(1)–(3), (b)(1).) We turn now to the thornier question of whether the record of conviction conclusively refutes the allegations of the petition.

At Mason's trial, the court gave jury instructions on two alternative theories of murder liability—malice murder and felony murder—as well as aiding and abetting principles.[3] The verdict form for the murder charge did not require the jury to specify which theory of liability it relied upon to find Mason guilty of murder, nor did it require the jury to identify whether Mason was the direct perpetrator of the murder or an aider and abettor. Thus, the instructions and verdict form allowed the jury to find Mason guilty of either first degree malice murder or first degree felony murder, as either a direct perpetrator or an aider and abettor.

The People contend the record of conviction renders Mason ineligible for relief because "he was the sole and actual perpetrator of the killing," such that he could still be found guilty of murder under current law. To support this claim, the People emphasize that the third amended information charged only Mason—and no other codefendants—with the murder. We do not agree with the People that the district attorney's discretionary decision to charge

---

[3]    The trial court did not instruct the jury on the natural and probable consequences doctrine.

Mason as the sole defendant for the murder charge in the operative information necessarily proves he was the sole and actual killer.

"The [third] amended information does establish that [Mason] was charged alone, but a charging decision does not establish any facts as a matter of law. [Citation.] Moreover, we are aware of no authority requiring prosecutors to try all codefendants together, so this single charging document does not foreclose the possibility of other people having been charged for related crimes. Even further, the information did not foreclose the prosecution from presenting imputed malice before a jury regardless of whether it charged others. Thus, the charging document here does not establish ineligibility as a matter of law, where [Mason's] ' "prima facie bar was intentionally and correctly set very low." ' " (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339; see also *Williams, supra*, 103 Cal.App.5th at p. 387 [rejecting People's argument that petitioner was ineligible for resentencing under section 1172.6, as a matter of law, "[b]ecause no other codefendants were charged and no target crimes or underlying felonies were alleged"].)

The People also claim the record of conviction precludes relief because the jury returned a true finding on the sentencing enhancement allegation that Mason intentionally and personally discharged a firearm and proximately caused great bodily injury or death to a person other than an accomplice, within the meaning of section 12022.53, subdivision (d). Once more, we disagree with the People's claim that relief is foreclosed.

"Section 12022.53, subdivision (d) provides that the defendant must have intended to discharge a firearm, but does not refer to an 'intent to achieve any additional consequence.' [Citation.] It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or

10

death. … [¶] Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*); see also *In re Ferrell* (2023) 14 Cal.5th 593, 604 ["Section 12022.53, subdivision (d), requires only an intent to discharge a firearm, not subjective awareness of a risk or disregard for life. [Citations.] Thus, a finding under this section is no proxy for the mental component of implied malice murder."].) Because the firearm enhancement finding does not prove Mason acted with malice aforethought, it does not establish as a matter of law that he still could be convicted of malice murder under current law.

The firearm enhancement finding also does not conclusively establish that Mason could be convicted of felony murder under a theory of liability that remains valid under current law. At the time of Mason's trial, a defendant could be convicted of felony murder " 'as an aider and abettor so long as [the defendant] had "the specific intent to commit the underlying felony" and, in furtherance of that intent, committed acts from which death resulted. [Citation.] In other words, an aider and abettor of the underlying felony was held " 'strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony.' " ' " (*People v. Cooper* (2022) 77 Cal.App.5th 393, 409–410; see *Strong, supra,* 13 Cal.5th at p. 704.) As noted, Senate Bill 1437, with "exceptions, … narrowed the scope of the felony-murder rule so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the

11

actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468.)

Here, the jury's firearm enhancement finding does not prove that Mason actually killed Traaen during the attempted robbery (§ 189, subd. (e)(1)), given that the verdict form for the firearm enhancement required the jury to determine whether Mason "discharge[d] a firearm and proximately cause[d] *great bodily injury or* death" to Traaen. (Italics added.) This disjunctively phrased verdict form left open the prospect, however slight, that Mason may have discharged a firearm causing Traaen to suffer great bodily injury, whereas an accomplice actually killed Traaen.[4]  Moreover, as previously noted, an enhancement under section 12022.53, subdivision (d), does not require proof the defendant harbored a particular mental state as to the victim's injury or death. (*Offley, supra*, 48 Cal.App.5th at p. 598.)  Thus, the jury's finding does not establish, as a matter of law, that Mason aided and abetted the actual killer while harboring an intent to kill (§ 189, subd. (e)(2)), or that he was a major participant in the attempted robbery who acted with reckless indifference to human life (*id.*, subd. (e)(3)).

In sum, Mason may be entitled to relief, notwithstanding the jury's firearm enhancement finding and the district attorney's decision to charge him as the sole defendant for count 11.  Even if this possibility is " 'quite narrow,' " the relevant question at the prima facie stage "is not whether it is

---

4    This possibility is consistent with the felony-murder instructions the trial court provided to the jury at trial.  In one instruction, CALCRIM 540B, the court told the jury it could find Mason guilty of first degree felony murder "even if another person did the act that resulted in the death."

12

*likely*" the petitioner will prevail. (*Curiel, supra*, 15 Cal.5th at p. 470.) Instead, the court must decide whether the record of conviction "foreclose[s] that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage." (*Ibid.*; see *Williams, supra*, 103 Cal.App.5th at p. 406 ["A likelihood that a petitioner cannot prevail is insufficient to warrant denial of the petition at the prima facie stage."].) Because it is possible the jury may have convicted Mason under a felony-murder theory that is no longer valid, the court erred by summarily denying the petition as to count 11.[5]

B. *The Trial Court Properly Denied the Petition as to Count 12*

Mason also challenges the order insofar as it summarily denies the petition to vacate his attempted murder conviction (count 12). Like his arguments with regard to the murder conviction, Mason claims the trial court erred by summarily denying the petition to vacate the attempted murder conviction because he filed a facially sufficient petition and the record of conviction does not preclude relief as a matter of law.

Although Mason filed a facially sufficient petition for relief, the record of conviction conclusively negates the petition's allegation that he "could not presently be convicted of ... attempted murder because of [the] changes to [s]ection 188 or 189" effectuated by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) Stated differently, Mason is ineligible for relief because the record shows the jury necessarily found him guilty of attempted murder under a theory of liability that remains valid today. (*Morales, supra*, 102 Cal.App.5th at pp. 1130–1131 ["if the record of conviction ... conclusively establishes the jury

---

5     The People do not argue that the jury's true findings on the multiple-murder and robbery-murder special circumstance allegations, or any other aspects of the record of conviction, preclude relief as a matter of law.

13

found facts sufficient to support [the petitioner's] conviction of attempted murder under current law, he has not made his prima facie case"].)

The resentencing statute "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." *(People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); see *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 [a "petition [is] properly denied as to [an] attempted murder conviction … if the record affirmatively demonstrates the jury did not rely on the natural and probable consequences doctrine"].) " '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).' " (*Curiel, supra*, 15 Cal.5th at p. 466.) "Because section 188, subdivision (a)(3), [now] prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.)

Here, the jury could not have convicted Mason under the now-invalid theory of natural and probable consequences attempted murder liability because the court never instructed the jury on the natural and probable consequences doctrine. Rather, it provided an instruction on attempted murder (CALCRIM No. 600), which—read in conjunction with the aiding and abetting instructions—allowed the jury to convict Mason only if it found he directly perpetrated the attempted murder, or directly aided and abetted the

14

attempted murder, while harboring an intent to kill.[6]  Both of these theories remain valid under current law.  (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465 ["Although attempted murder under the natural and probable consequences doctrine no longer exists due to recent changes in sections 188 and 189, '[d]irect aiding and abetting remains a valid theory of attempted murder ....' "], quoting *Coley, supra*, 77 Cal.App.5th at p. 548.)

Because the jury was never instructed it could find Mason guilty of attempted murder under the now-invalid natural and probable consequences doctrine, the record conclusively shows the jury relied on a still-valid theory of liability and, therefore, he could be convicted of attempted murder under existing law.  (*Coley, supra*, 77 Cal.App.5th at p. 548 [summary denial of petition to resentence attempted murder conviction is proper because jury was not instructed on natural and probable consequences doctrine]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 ["the jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to [petitioner].  He is therefore ineligible for resentencing"]; see also *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167 ["If … the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [petitioner] would be unable to make a prima facie showing that he is entitled to relief"].)  And, because Mason still could be convicted of attempted murder under current law, the trial court properly denied the petition as to count 12.

---

[6]    As given, CALCRIM No. 600 stated in part, "The defendant is charged in Count Twelve with attempted murder. [¶] To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill a person."

15

## IV

## DISPOSITION

We reverse the summary denial order and remand the matter to the trial court with instructions:  (1) to issue a new order summarily denying the petition as to the attempted murder conviction (count 12); and (2) to issue an order to show cause and conduct further proceedings consistent with section 1172.6, subdivision (d), as to the murder conviction (count 11).


McCONNELL, P. J.

WE CONCUR:


DATO, J.


DO, J.